RECEIVED

AUG 1 5 2011

TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE, LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

| | |
|---|---|
| RANDALL SCOTT JAMES, ET AL. | CIVIL ACTION NO. 09-0727 |
| VERSUS | JUDGE DOHERTY |
| LINCOLN GENERAL INS. CO., ET AL. | MAGISTRATE JUDGE HANNA |

## MEMORANDUM RULING

Pending before the Court is the Motion for Summary Judgment [Doc. 46] filed by defendant Sagamore Insurance Company ("Sagamore"). In its motion, Sagamore seeks dismissal of all claims asserted against it by plaintiffs Dwain Allen O'Quain, individually and on behalf of S&D Auto Transport, LLC, and Courtland Simoneaux, individually and on behalf of his deceased father, Randall Scott James (hereinafter referred to collectively as "plaintiffs") on grounds the policy of uninsured/underinsured motorist coverage provided by Sagamore is not triggered under the facts of this case. Plaintiffs oppose the motion [Doc. 50], and Sagamore has filed a Motion for Leave to File a Reply Brief [Doc. 52], which is GRANTED herein.

For the following reasons, the motion for summary judgment is GRANTED in its entity, and all claims alleged against Sagamore are DISMISSED WITHOUT PREJUDICE.

### I. Factual and Procedural Background

The instant lawsuit arises out of a vehicular accident that occurred in the state of Louisiana on or about April 19, 2008, in which the plaintiff's decedent, Randall Scott James ("James"), a Mississippi resident, was injured after his vehicle was struck by an 18-wheeler operated by Elier

Hernandez, a Florida resident.¹ At the time of the accident, both Mr. James and Mr. Hernandez were acting in the course and scope of their employment, Mr. James for S&D Transport, LLC ("S&D"), and Mr. Hernandez for Fast Lane Trucking USA, Inc. ("Fast Lane"). Plaintiffs allege the accident was solely due to the fault of Mr. Hernandez.

The vehicle operated by Mr. Hernandez was insured by a policy of automobile liability insurance issued by defendant Lincoln General Insurance Company ("Lincoln) to Mr. Hernandez's employer, Fast Lane, in the state of Florida. The Lincoln policy provides bodily injury liability coverage up to $1,000,000.00 per occurrence. The vehicle operated by Mr. James was insured by a policy of automobile liability insurance issued to Mr. James's employer, S&D, by Sagamore. The Sagamore policy provides uninsured motorist bodily injury ("UM") coverage up to $750,000.00 per occurrence.² The Sagamore policy was issued to S&D in the state of Mississippi.

---

¹ The instant lawsuit was filed by Mr. James and Dwane Allen O'Quain, individually and on behalf of S&D, on March 9, 2009. Mr. James died on March 13, 2010, and on June 29, 2010, with leave of Court, Mr. James's son, Courtland Simoneaux, was substituted as a party plaintiff in the case. By supplemental and amending petition, plaintiffs named Sagamore as a defendant, seeking uninsured/underinsured motorist benefits.

² Although not addressed by the parties in their briefs, it appears Mr. James, as an employee of S&D, was covered under the Sagamore policy, which provided bodily injury and property damage liability, as well as UM coverage up to $750,000.00, as follows:

Part I – Liability
COVERAGE 1 – BODILY INJURY LIABILITY
COVERAGE B – PROPERTY DAMAGE LIABILITY

LIABILITY COVERAGE

We will pay damages for which an insured is legally liable because of bodily injury or property damage caused by an occurrence and resulting form the ownership, maintenance or use, of an insured vehicle.

[ . . . . ]

As used in this Part:

**(1) "Insured" means**

    **(a) You**

2

The Sagamore insurance policy issued to S&D defines "uninsured motor vehicle" in pertinent part as:

> C. "Uninsured motor vehicle" means a land motor vehicle or trailer:
>
> 4. That is an underinsured motor vehicle. An underinsured motor vehicle is a motor vehicle or trailer for which the sum of all liability policies at the time of an accident provides at least the amounts required by the applicable law where the insured vehicle is principally garaged but their limits are less than the sum of:
>
>    a. The limit of liability for uninsured motorists coverage applicable to the vehicle the insured was occupying at the time of the accident; and
>
>    b. Any other limit of liability for uninsured motorists coverage applicable to the insured as a named insured or family member . . .

In the instant motion for summary judgment, Sagamore seeks dismissal of all claims alleged against it on grounds the claims asserted by plaintiffs against Sagamore arise out of a contract of insurance issued in the state of Mississippi to a Mississippi company whose employee (Mr. James) was also a Mississippi resident, who was injured while only transitorily in Louisiana. Thus, Sagamore argues Mississippi law applies to the plaintiffs' claim for UM coverage under the Sagamore policy. Sagamore argues under Mississippi law, because the limits of the bodily injury liability policy issued by Lincoln General to Mr. Hernandez's employer, Fast Lane, are greater than the UM limits of the Sagamore policy issued to S&D, Mr. Hernandez's vehicle is not an "uninsured motor vehicle" under the UM provision of the Sagamore policy, therefore, UM coverage under the

---

**(b) Any other person or organization using an insured vehicle with your permission.**

*See* Sagamore policy, page 3, attached as Exhibit B to Sagamore's motion for summary judgment, Doc. 46 (emphasis added).

3

Sagamore policy is not triggered.

## II. Summary Judgment Standard

A party claiming relief, or a party against whom relief is sought, may move, with or without supporting affidavits, for summary judgment on all or part of the claim. Fed. R. Civ. Proc. 56(a) and (b). Summary judgment is appropriate if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. Proc. 56(c)(1)(2).

> When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must – by affidavits or as otherwise provided in this rule – set out specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party.

Fed. R. Civ. Proc. 56(e). As summarized by the Fifth Circuit in *Lindsey v. Sears Roebuck and Co.*, 16 F.3d 616, 618 (5th Cir. 1994):

> When seeking summary judgment, the movant bears the initial responsibility of demonstrating the absence of an issue of material fact with respect to those issues on which the movant bears the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). However, where the non-movant bears the burden of proof at trial, the movant may merely point to an absence of evidence, thus shifting to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial. Id. at 322; *see also, Moody v. Jefferson Parish School Board*, 2 F.3d 604, 606 (5th Cir.1993); *Duplantis v. Shell Offshore*, Inc., 948 F.2d 187, 190 (5th Cir.1991). Only when "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party" is a full trial on the merits warranted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).
>
> The Supreme Court has instructed:
>
> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Where no such

> showing is made, "[t]he moving party is entitled to a judgment as a matter of law because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof."

*Lujan v. National Wildlife Federation*, 497 U.S. 871, 884 (1990), *quoting Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)). The Court later states:

> In ruling upon a Rule 56 motion, "a District Court must resolve any factual issues of controversy in favor of the non-moving party" only in the sense that, where the facts specifically averred by that party contradict facts specifically averred by the movant, the motion must be denied. That is a world apart from "assuming" that general averments embrace the "specific facts" needed to sustain the complaint. As set forth above, Rule 56(e) provides that judgment shall be entered against the nonmoving party unless affidavits or other evidence set forth specific facts showing that there is a genuine issue for trial. The object of this provision is not to replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit. Rather, the purpose of Rule 56 is to enable a party who believes there is no genuine dispute as to a specific fact essential to the other side's case to demand at least one sworn averment of that fact before the lengthy process of litigation continues.

*Id.* at 888-89 (1990) (internal quotations and citations omitted). The Fifth Circuit has further elaborated:

> [The parties'] burden is not satisfied with 'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence. We resolve factual controversies in favor of the nonmoving party, but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts. We do not, however, in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts. ...[S]ummary judgment is appropriate in any case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant.

*Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (citations and internal quotations omitted).

Finally, in evaluating evidence to determine whether a factual dispute exists, "credibility determinations are not part of the summary judgment analysis." *Id.* To the contrary, in reviewing

all the evidence, the court must disregard all evidence favorable to the moving party that the jury is not required to believe, and should give credence to the evidence favoring the nonmoving party, as well as that evidence supporting the moving party that is uncontradicted and unimpeached. *Roberts v. Cardinal Servs.*, 266 F.3d 368, 373 (5th Cir. 2001).

### III. Law and Analysis

The instant motion hinges upon what law is applicable to the Sagamore insurance policy. Sagamore argues Mississippi law is applicable to the policy; plaintiffs argue the policy is governed by Louisiana law. If Mississippi law applies, it appears UM coverage under the Sagamore policy is not triggered.

### 1. What state's law – Mississippi or Louisiana – applies to the UM policy at issue?

The Louisiana Supreme Court has set forth a framework for determining what state's law applies to a contract, in a multistate case such as the one before this Court. In *Champagne v. Ward*, 893 So.2d 773, 780 (La. 2005), the court was faced with the issue of whether Louisiana or Mississippi law applied to a UM policy issued to a Mississippi resident, when the accident occurred in Louisiana between that Mississippi resident and a Louisiana resident.[3] The precise issue on appeal to the Louisiana Supreme Court was whether Louisiana's UM law **must** be applied to the interpretation of a foreign insurance policy in a multistate case when the accident occurred in Louisiana and involved a Louisiana resident or whether courts should first engage in a choice-of-law analysis to determine which state's law applies. In *Champagne*, the court approved a choice-of-law analysis under Articles 3515 and 3537 of the Louisiana Civil Code. Article 3515, which is found

---

[3] In this sense, the *Champagne* case is not squarely on point, in that the instant case does not involve a party that is a Louisiana resident.

within Book IV (Conflicts of Laws) of the Civil Code, states:

> **Art. 3515. Determination of the applicable law; general and residual rule**
>
> Except as otherwise provided in this Book, an issue in a case having contacts with other states is governed by the law of the state whose policies would be most seriously impaired if its law were not applied to that issue.
>
> That state is determined by evaluating the strength and pertinence of the relevant policies of all involved states in the light of: (1) the relationship of each state to the parties and the dispute; and (2) the policies and needs of the interstate and international systems, including the policies of upholding the justified expectations of parties and of minimizing the adverse consequences that might follow from subjecting a party to the law of more than one state.

La. Civ. Code. art. 3515 (West 2011).

Article 3537, also found in Book IV, states:

> **Art. 3537. General rule**
>
> Except as otherwise provided in this Title, an issue of conventional obligations is governed by the law of the state whose policies would be most seriously impaired if its law were not applied to that issue.
>
> > That state is determined by evaluating the strength and pertinence of the relevant policies of the involved states in the light of: (1) the pertinent contacts of each state to the parties and the transaction, including the place of negotiation, formation, and performance of the contract, the location of the object of the contract, and the place of domicile, habitual residence, or business of the parties; (2) the nature, type, and purpose of the contract; and (3) the policies referred to in Article 3515, as well as the policies of facilitating the orderly planning of transactions, of promoting multistate commercial intercourse, and of protecting one party from undue imposition by the other.

La. Civ. Code art. 3537 (West 2011).

In *Champagne*, the court concluded the Louisiana UM law, codified at La. Rev. Stat.

§22:680,[4] is not automatically applied to multistate cases without a conflict-of-law analysis, but rather, "the proper starting point in a multistate case is to first determine that there is a difference between Louisiana's UM law and the UM law of the foreign state, and then to conduct a choice-of-law analysis, as codified in Book IV of the Civil Code, to determine which state's law applies to the interpretation of the UM policy." 893 So.2d at 773. The court went on:

> Louisiana's Conflict of Laws provisions, as set forth *supra,* afford the balancing of competing interests between states. The objective of those provisions is to identify the state whose policies would be most seriously impaired if its laws were not applied to the issue at hand. *See* La.C.C. arts. 3515 and 3537, *supra.* With respect to the instant case, the law of the state applicable to the insurance contract and its UM coverage is determined by evaluating the strength and pertinence of the relevant policies of the involved states in light of the factors set forth in those Civil Code articles.

*Id.* at 786.

In *Champagne,* the court concluded with respect to the Mississippi and Louisiana law governing UM policies, "there are profound competing public policies and interests between the states of Louisiana and Mississippi in this case. As stated above, the purpose of [Louisiana's] UM legislation is to promote full recovery for innocent tort victims," while "Mississippi has an interest in the regulation of its insurance industry and in the contractual obligations that are inherent parts thereof. The integrity of the contract is a substantial and real interest." *Id.* at 788, *citing Zuviceh v. Nationwide Ins. Co.,* 786 So.2d 340, 346 (La. App. 1st Cir.) ("The fact that Congress has allowed fifty states to have their own uniform system of regulations governing insurance strongly suggests this is a legitimate public purpose."), *writ denied,* 801 So.2d 373 (La. 2001). The court then engaged

---

[4] In *Champagne,* the UM statute was identified as La. Rev. Stat. §22:1406(D). However, after commencement of the *Champagne* lawsuit, La. Rev. Stat. §22:1406(D) was redesignated as La. Rev. Stat. §22:680 by Act No. 456 of 2003, Section 3. However, the language of §22:1406(D)(1)(a)(iii) remains unchanged.

in a conflicts analysis, noting the following factors: The accident occurred in Louisiana; defendant was a Louisiana resident; defendant's automobile policy was issued to defendant in Louisiana; plaintiff was a resident of Mississippi; Mississippi was the place of negotiation and formation of the UM insurance contract at issue; the vehicle on which plaintiff purchased coverage was garaged and registered in Mississippi, and plaintiff's UM insurance policy was a Mississippi contract. Under the foregoing circumstances, the court held <u>Mississippi</u> had a more substantial interest in the uniform application of its laws governing insurance contracts than Louisiana had in providing an insurance remedy to an out-of-state resident who was injured while transitorily within the borders of Louisiana. *Id.* at 789. The court further explained:

> The application of Louisiana law to the insurance policy would result in the abrogation of a Mississippi contract. Moreover, plaintiff's premium for UM coverage was based on the application of Mississippi law to the contract. Under a conflicts-of-laws analysis, we conclude that Mississippi's policies will be most seriously impaired if its law is not applied to the insurance policy.

*Id.*

In the instant case, this Court's first task is to determine whether Louisiana or Mississippi law applies to the contract of insurance in this multistate case, particularly as the Louisiana Supreme Court has concluded the purposes of the Louisiana and Mississippi UM statutes are different. In the instant case, this Court notes the plaintiff decedent was a resident of Mississippi; Mississippi is the place of negotiation and formation of the UM policy at issue; the vehicle on which the decedent's employer purchased coverage and which was involved in the accident at issue was garaged and registered in Mississippi, and the plaintiffs' UM insurance policy is a Mississippi contract. Additionally, the defendant driver in this case, as well as the defendant's employer, are both Florida residents who are insured by a policy of automobile liability insurance issued in Florida. Thus, the

9

only connection to Louisiana is that the accident happened in Louisiana, making Louisiana's interest in the case even more tenuous than in the *Champagne* case.

Plaintiffs' attempts to argue Louisiana has a stronger interest by arguing the decedent's contacts with Louisiana while in the course and scope of his employment are unavailing. The fact that S&D's customer base was largely in Louisiana and the decedent frequently transported automobiles to and from dealerships and auctions located within Louisiana is not material to the *contractual* issue before the Court. Although the Louisiana contacts might be relevant to an analysis of what state's law might apply to the *tort that occurred* -- the actual motor vehicle accident – the issue before the Court is which state's law – Mississippi or Louisiana – applies to the *contract of insurance* purchased by the plaintiff, as it is coverage under that policy that is at issue. The *Champagne* court was clear that when faced with the circumstances such as those that exist in this case, Mississippi has a more substantial interest in the uniform application of its laws governing insurance contracts than Louisiana had in providing an insurance remedy to an out-of-state resident who was injured while only transitorily within the borders of Louisiana. The foregoing is particularly true in this case, where the defendant driver was a resident of Florida, which is also the state in which the defendant's insurance contract was issued.

Considering the foregoing, this Court concludes Mississippi law governs the interpretation of the Sagamore policy and the issue of whether UM coverage is triggered under that policy.

**2. Under Mississippi law, is coverage under the UM policy triggered?**

Plaintiffs do not appear to dispute that if Mississippi law applies to the Sagamore policy, coverage under the Sagamore policy is not triggered, having chosen not to address this argument in their response brief. Furthermore, Sagamore's argument appears well-grounded in law and fact. For

plaintiffs to recover under the Sagamore policy, the vehicle driven by Mr. Hernandez must be an "uninsured motor vehicle" as defined under Mississippi law. Mississippi Code Section 83-11-103 defines an uninsured motor vehicle as:

> (c) The term "uninsured motor vehicle" shall mean:
>
>> (i) A motor vehicle as to which there is no bodily injury liability insurance; or
>>
>> (ii) A motor vehicle as to which there is such insurance in existence, but the insurance company writing the same has legally denied coverage thereunder or is unable, because of being insolvent at the time of or becoming insolvent during the twelve (12) months following the accident, to make payment with respect to the legal liability of its insured; or
>>
>> (iii) *An insured motor vehicle, when the liability insurer of such vehicle has provided limits of bodily injury liability for its insured which are less than the limits applicable to the injured person provided under his uninsured motorist coverage;* . . . .

Miss. Code Ann. §83-11-103 (West 2011) (emphasis added).

Thus, to determine whether a tortfeasor's vehicle is an "uninsured motor vehicle," the court must compare the respective limits of both the liability and UM insurance policies at issue. It is well-settled Mississippi law defines an uninsured vehicle in terms of the *policy limits*, as distinguished from proceeds actually received by a particular claimant. Furthermore, the amount of damages a claimant might receive is irrelevant to determining eligibility for uninsured motorist coverage. *See, e.g., Cossitt v. Federated Mutual Ins. Co.*, 541 So.2d 436, 440 (Miss. 1989), *citing Wilson v. Nationwide Mutual Ins. Co.*, 667 F.Supp. 349, 355 (N.D Miss. 1987).

After reviewing the language of the Sagamore policy and the declarations page of the Liberty General policy, this Court concludes under the facts of this case, the vehicle driven by Mr. Hernandez and owned by his employer, Fast Lane, is not an uninsured motor vehicle as to the

decedent, because the limits of liability provided by Lincoln General ($1,000,000.00) – Fast Lane's insurer – on the Fast Lane vehicle is not less than the uninsured motorist coverage policy limits of the Sagamore policy ($750,000.00).[5]

Because Fast lane's vehicle does not qualify as an uninsured motor vehicle under Section 83-11-103 of the Mississippi Code, it does not qualify as an uninsured motor vehicle under the Sagamore policy. Indeed, the Sagamore policy defines an "uninsured motor vehicle" as a motor vehicle :

> That is an underinsured motor vehicle. An underinsured motor vehicle is a motor vehicle or trailer for which the sum of all liability policies at the time of an accident provides at least the amounts required by the applicable law where the insured vehicle is principally garaged *but their limits are less than the sum of:*
> 
> > a. *The limit of liability for uninsured motorists coverage applicable to the vehicle the insured was occupying at the time of the accident;* . . . .

Considering the foregoing, and considering the lack of opposition provided by plaintiffs to the well-argued motion for summary judgment filed by Sagamore, this Court concludes the uninsured/underinsured motorist coverage provided by Sagamore was not triggered under the facts of this case.

### 3.    Should dismissal of Sagamore be with or without prejudice?

The only remaining issue for this Court to consider is whether the dismissal of Sagamore should be with or without prejudice. In their response brief, plaintiffs argue if this Court were to dismiss Sagamore as a defendant, it should do so without prejudice, because "there is a very real

---

[5] Sagamore argues the plaintiffs will likely argue that because Hernandez's liability insurer previously settled with another driver for roughly $250,000.00, thereby depleting the total limits of $1,000,000.00 available to the plaintiffs under the Lincoln General policy, the Fast Lane vehicle is now an uninsured motor vehicle. However, the plaintiffs do not make that argument in their brief. Moreover, this argument has been rejected by the Mississippi Supreme Court. *See Cossitt v. Federated Mutual Ins. Co.*, 541 So.2d 436, 438 (Miss. 1989).

chance that all underlying coverage through the primary [carrier], Lincoln General Insurance Company, may be declared insolvent thereby making Sagamore's policy primary even under Mississippi [l]aw." In support of its argument, plaintiffs aver Lincoln General has been suspended from doing business in multiple states, including Louisiana, over solvency issues, and has had to inform its California policyholders it is unable to meet all of its obligations.

Mississippi law provides that a vehicle may qualify as an "uninsured motor vehicle" if the vehicle has lost its coverage due to a carrier's insolvency. Section 83-11-103 states:

> (c) The term "uninsured motor vehicle" shall mean:
>
>> (ii) *A motor vehicle as to which there is such insurance in existence, but the insurance company writing the same has legally denied coverage thereunder or is unable, because of being insolvent at the time of or becoming insolvent during the twelve (12) months following the accident, to make payment with respect to the legal liability of its insured;* . . . .

Miss. Code Ann. §83-11-103 (West 2011).

Sagamore does not address the plaintiffs' solvency argument in its reply brief. However, the Court is cognizant that the solvency status of Liberty General could change at any time. Should Liberty General become insolvent, it would appear, based on Section 83-11-103 of the Mississippi Code, that coverage under the Sagamore policy could be triggered. Considering the foregoing, this Court concludes the dismissal of Sagamore should be without prejudice to the rights of the plaintiffs to bring Sagamore back into the lawsuit should Liberty General declare insolvency.

### IV. Conclusion

For the foregoing reasons, the Motion for Summary Judgment [Doc. 46] filed by defendant Sagamore Insurance Company ("Sagamore") is GRANTED, and all claims of the plaintiffs asserted

against Sagamore are DISMISSED WITHOUT PREJUDICE.

THUS DONE AND SIGNED in Chambers, Lafayette, Louisiana, this ___15___ day of August, 2011.

_____
REBECCA F. DOHERTY
UNITED STATES DISTRICT JUDGE