**RECEIVED**

AUG 1 5 2011

TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE, LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

RANDALL SCOTT JAMES, ET AL.                CIVIL ACTION NO. 09-0727

VERSUS                                      JUDGE DOHERTY

LINCOLN GENERAL INS. CO., ET AL.            MAGISTRATE JUDGE HANNA

## MEMORANDUM RULING

Pending before the Court is the Joint Motion for Summary Judgment [Doc. 59] filed by the defendants in this matter, Lincoln General Insurance Company, Fast Lane Trucking, USA, Inc, Elier Hernandez, and Sagamore Insurance Company (hereinafter referred to collectively as "defendants"). This Court has previously dismissed Sagamore from the lawsuit without prejudice, therefore the instant motion is moot with respect to Sagamore. In their motion, defendants seek dismissal of "any and all claims for wrongful death asserted by [p]laintiffs in this matter" on grounds the plaintiffs cannot prove all of the elements of such a claim as a matter of law. The motion is opposed by the plaintiffs [Doc. 62], and defendants have filed a Motion for Leave to file Reply Brief [Doc. 69], which is herein GRANTED.

For the following reasons, the Motion for Summary Judgment is GRANTED in its entity, and plaintiffs' wrongful death claim asserted against all defendants is DISMISSED WITH PREJUDICE.

## I.    Factual and Procedural Background

The instant lawsuit arises out of a vehicular accident that occurred in the state of Louisiana on or about April 19, 2008, in which the plaintiff's decedent, Randall Scott James ("James"), a Mississippi resident, was injured after his vehicle was struck by an 18-wheeler operated by Elier Hernandez, a Florida resident. At the time of the accident, both Mr. James and Mr. Hernandez were

acting in the course and scope of their employment, Mr. James for S&D Transport, LLC ("S&D"), and Mr. Hernandez for Fast Lane Trucking USA, Inc. ("Fast Lane").  Plaintiffs allege the accident was solely due to the fault of Mr. Hernandez.  Also at the time of the accident, S&D was co-owned equally by Mr. James and Mr. Dwane O'Quain and was in the business of transporting vehicles purchased at auction by Mr. O'Quain.

The original complaint was filed by Mr. James and Mr. O'Quain, individually and on behalf of S&D, on March 9, 2009, alleging property damage to the truck operated by Mr. James and penalties for the alleged bad faith of Lincoln General to timely pay for repairs to the truck operated by Mr. James.  Plaintiffs thereafter amended their complaint to add claims for general and special damages due to the injuries suffered by Mr. James in the accident and loss of revenue sustained by S&D for Lincoln General's bad faith failure to timely pay for repairs to Mr. James's truck.  Mr. James died on March 13, 2010, and on June 29, 2010, with leave of Court, Mr. James's son, Courtland Simoneaux, was substituted as a party plaintiff in the case.  After Mr. James's death, in plaintiffs' amending complaint dated June 29, 2010, plaintiffs added a claim for wrongful death, presumably against all of the defendants, arguing Mr. Simoneaux is entitled to damages for the wrongful death of his father, which Mr. Simoneaux alleges was caused by Mr. James's vehicular accident with Mr. Hernandez.

In the instant motion for summary judgment, defendants seek dismissal of plaintiffs' wrongful death claim on grounds plaintiffs have not "produced or identified any competent evidence, witness (fact or expert) or report that would serve as any form of support for the plaintiffs' argument that Mr. James's death was more likely than not caused or contributed to by the accident that is the subject matter of this litigation (or resulting medical treatment rendered to Mr. James)," all as more

fully explained herein.

## II.    Summary Judgment Standard

A party claiming relief, or a party against whom relief is sought, may move, with or without supporting affidavits, for summary judgment on all or part of the claim. Fed. R. Civ. Proc. 56(a) and (b). Summary judgment is appropriate if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. Proc. 56(c)(1)(2).

> When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must – by affidavits or as otherwise provided in this rule – set out specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party.

Fed. R. Civ. Proc. 56(e).  As summarized by the Fifth Circuit in *Lindsey v. Sears Roebuck and Co.*, 16 F.3d 616, 618 (5th Cir. 1994):

> When seeking summary judgment, the movant bears the initial responsibility of demonstrating the absence of an issue of material fact with respect to those issues on which the movant bears the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). *However, where the non-movant bears the burden of proof at trial, the movant may merely point to an absence of evidence, thus shifting to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial. Id.* at 322; *see also, Moody v. Jefferson Parish School Board*, 2 F.3d 604, 606 (5th Cir.1993); *Duplantis v. Shell Offshore*, Inc., 948 F.2d 187, 190 (5th Cir.1991). Only when "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party" is a full trial on the merits warranted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

The Supreme Court has instructed:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Where no such

showing is made, "[t]he moving party is entitled to a judgment as a matter of law because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof."

*Lujan v. National Wildlife Federation*, 497 U.S. 871, 884 (1990) (emphasis added), *quoting Celotex*

*Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)). The Court later states:

> In ruling upon a Rule 56 motion, "a District Court must resolve any factual issues of controversy in favor of the non-moving party" only in the sense that, where the facts specifically averred by that party contradict facts specifically averred by the movant, the motion must be denied. That is a world apart from "assuming" that general averments embrace the "specific facts" needed to sustain the complaint. As set forth above, Rule 56(e) provides that judgment shall be entered against the nonmoving party unless affidavits or other evidence set forth specific facts showing that there is a genuine issue for trial. The object of this provision is not to replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit. Rather, the purpose of Rule 56 is to enable a party who believes there is no genuine dispute as to a specific fact essential to the other side's case to demand at least one sworn averment of that fact before the lengthy process of litigation continues.

*Id.* at 888-89 (1990) (internal quotations and citations omitted).  The Fifth Circuit has further

elaborated:

> [The parties'] burden is not satisfied with 'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence. We resolve factual controversies in favor of the nonmoving party, but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts. We do not, however, in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts. ...[S]ummary judgment is appropriate in any case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant.

*Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5ᵗʰ Cir. 1994) (en banc) (citations and internal

quotations omitted).

Finally, in evaluating evidence to determine whether a factual dispute exists, "credibility

determinations are not part of the summary judgment analysis." *Id.*  To the contrary, in reviewing

4

all the evidence, the court must disregard all evidence favorable to the moving party that the jury is not required to believe, and should give credence to the evidence favoring the nonmoving party, as well as that evidence supporting the moving party that is uncontradicted and unimpeached. *Roberts v. Cardinal Servs.*, 266 F.3d 368, 373 (5th Cir. 2001).

## III.    Law and Analysis

As set forth in the section addressing the summary judgment standard, this Court specifically notes when the nonmoving party bears the burden of proof at trial, there is no genuine issue of material fact if the nonmoving party cannot come forward at the summary judgment stage with evidence of sufficient quantity and quality for a reasonable jury to find the party can satisfy its substantive evidentiary burden. *Anderson v. Liberty Lobby*, 477 U.S. 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).  In construing the federal summary judgment standard, the United States Supreme Court has held summary judgment *shall be granted* where the evidence is such that it would require a directed verdict for the moving party.  *Id.* (emphasis added)  The mere existence of a scintilla of evidence on the non-moving party's position will be insufficient; there must be evidence on which the jury could reasonably find for that party. Thus, Rule 56 mandates the entry of summary judgment, after adequate time for discovery, and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial. *Lujan*, 497 U.S. at 884; *Celotex*, 477 U.S. at 322-23.

In the instant motion, although the parties have failed to specifically address the issue, it appears to be undisputed Louisiana law will apply to the tort of wrongful death in this action. Therefore, this Court will assume, for purposes of this motion only, that Louisiana law applies to the

issue of whether the plaintiffs can substantively prove their wrongful death claim at trial.

Defendants argue the plaintiffs bear the burden of proving medical causation. Indeed, under Louisiana law, a plaintiff in a tort action must prove every essential element of his case, including medical causation, by a preponderance of the evidence. *Lasha v. Olin Corp.*, 625 So.2d 1002, 1005 (La. 1993); *Wisner v. Illinois Cen. Gulf R.R.*, 537 So.2d 740, 745 (La. App. 1st Cir. 1988), *writ denied*, 540 So.2d 342 (La. 1989). Furthermore, under Louisiana law, it is well-settled that expert medical testimony is required when the conclusion regarding medical causation is one that is not within common knowledge. *Chavers v. Travis*, 902 So.2d 389, 395 (La. App. 4th Cir. 2005)*, citing Hutchinson v. Shah,* 648 So. 2d 451, 452 (La. App. 1st Cir. 1994), *writ denied*, 653 So.2d 570 (La. 1995).

Defendants argue the cause of Mr. James's death, occurring as it did nearly two years after the vehicular accident at issue, is not a matter that can be reasonably considered one that is within a layperson's knowledge. Additionally, the defendants argue the plaintiffs have come forward with no otherwise admissible evidence to show the death was related to the accident at issue. Defendants further aver the deadlines for discovery and the submission of experts report has passed.[1] In response to the instant motion, the plaintiffs are required to come forward with some evidence to show they could reasonably prevail – by either operation of law or based on the existence of material facts – on the elements of their claim.

**1.     Does the doctrine of *res ipsa loquitor* apply?**

The first argument advanced by plaintiffs is that an otherwise healthy 46-year old male does

---

[1] This Court notes the plaintiffs are not asking for an extension of any deadlines in this matter. Defendants argue they have attempted to take the deposition of Dr. Blanda on several occasions – including February 2, 2011, May 23, 2011, June 5, 2011, and July 8, 2011 – to no avail.

not ordinarily die, and therefore, this Court should make the reasonable inference that the only other possible cause of death is the accident that occurred in April 2008.  Specifically, the plaintiffs argue:

> Unless some probable explanation can be produced by the defendants as to why this 46 year old man did not continue to live until or around the date of his normal life expectancy, the only fair and reasonable conclusion is that the accident and resultant injuries were the cause of his death.

By way of this argument, the plaintiffs appear to be advancing a theory of recovery under the doctrine of *res ipsa loquitor*.  This argument is unavailing for at least two reasons.

First, Louisiana law is clear: the doctrine of *res ipsa loquitur* is a rule of circumstantial evidence which allows an inference of negligence on the part of the defendant if the facts indicate the defendant's negligence, more probably than not, caused the injury. The doctrine applies in cases involving circumstantial evidence, rather than direct evidence, provided the plaintiff establishes the following foundation of facts: (1) the injury is of the kind which does not ordinarily occur in the absence of negligence; (2) the evidence sufficiently eliminates other possible causes of the injury, such as the plaintiff's own responsibility or the responsibility of others; and (3) the alleged negligence of the defendant must fall within the scope of his duty to the plaintiff, which will often be the case if the defendant had exclusive control of the thing or situation that caused the injury to the plaintiff. *Linnear v. CenterPoint Energy Entex/Reliant Energy*, 966 So.2d 36, 45 (La. 2007).

In the instant case, this Court concludes the doctrine of *res ipsa loquitur* does not apply, because there is direct evidence concerning Mr. James's cause of death in the form of the autopsy report and certificate of death.  Indeed, the autopsy report generated after Mr. James's autopsy indicates the cause of death of Mr. James was "cardiomegaly," *i.e.*, an enlarged heart with no mention of any relation to the accident or trauma.  Thus, this Court cannot make a *reasonable*

7

*inference* that Mr. James's death was caused by the accident that occurred in April 2008, because the direct evidence in this case suggests otherwise. Furthermore, it does not follow that "since the only medical conditions suffered and/or for which Mr. James was being treated at the time of his death were resulting from this accident," that accident was the cause of death. Indeed, the autopsy report specifically refutes that conclusion and militates in favor of a conclusion that the accident was *not* the cause of Mr. James's death.[2]   Finally, this Court notes people – even 46-year old otherwise seemingly healthy men – die in the absence of negligence. Thus, this Court concludes the doctrine of *res ipsa loquitor* does not apply or sufficiently establish the element of causation by operation of law.

Second, contrary to the plaintiffs' argument, which suggests the *defendants* must come forward with some evidence showing how Mr. James died, the burden is on the *plaintiffs* to prove at trial all of the necessary elements of a wrongful death cause of action. The plaintiffs cannot shift this burden to the defendants by way of a *res ipsa loquitor* argument.

### 2.     The testimony of Dr. Blanda

The plaintiffs argue the "only evidence or knowledge that is available regarding the cause of death of [Mr.] James are the medical records prepared by his treating physician, the testimony of Dr. Louis Blanda, which will be provided at trial along with the autopsy report and death certificate

---

[2] The plaintiffs appear to attempt to challenge the results of the autopsy, which actually occurred after Mr. James was embalmed, arguing Mr. James was buried on the day following the autopsy, and on the day of the burial, and before the issuance of the autopsy report, the Mississippi state medical examiner was arrested for felony drug possession by the Mississippi Bureau of Narcotics.  Plaintiffs argue the release of the autopsy report was delayed by three months, which precluded the plaintiffs from being able to obtain a more credible and/or thorough examination to determine the cause of death. This Court concludes the facts of this case are those before the Court, and the cause of death listed in the autopsy report – despite the circumstances under which the report was generated– have not been challenged by any other evidence in the case.

This Court also notes the plaintiffs have had ample time to retain the services of an expert qualified to review and/or interpret the autopsy report, but have chosen not to do so.

cited herein."[3]  It is believed Dr. Blanda, an orthopedist, was Mr. James's treating physician at the time of his death.[4]  The plaintiffs have not supplied this Court with the specific testimony of Dr. Blanda that is at issue.  However, defendants have provided the following portions of Dr. Blanda's opinions that they believe the plaintiffs will attempt to introduce as trial as evidence of cause of Mr. James's cause of death:

> The cause of [Mr. James's] death was probably cardiac according to the autopsy report.  I reviewed the report, especially the toxicology and it indicated that he had a trace amount of Soma which is the medication that I prescribed to him, but he also had another medication called Meprobamate in his system that was not prescribed by me.
>
> [ . . . ]
>
> You asked about my opinion on whether or not medications could be related to his death.  It does not appear on the autopsy report that there were any other causes of death except cardiac and possibly toxicology.  Just to give you a view of my thoughts on the autopsy, although I am not a pathologist, it seems that without any other definite cause of death that it is likely that the medication or chemical elements could have potentiated each other and caused side effects such as cardiac arrythmia and shock.[5]

Defendants argue Dr. Blanda's testimony/opinion is not admissible, because Dr. Blanda is not qualified to render an opinion regarding the cause of death in this case.  Thus, the threshold question for this Court becomes an evidentiary one, that is, whether Dr. Blanda's testimony is, on its face, admissible.  In making this determination, this Court notes the parties have, throughout their

---

[3] Although plaintiffs argue the defendants have not retained an expert to testify as to cause of death, defendants argue in their reply brief they have retained Dr. Kenneth Ferslew, a toxicologist, who will testify to his interpretation of the autopsy report and the toxicology "issues" raised by Dr. Blanda.

[4] Although the plaintiffs argue in their brief that they plan to introduce both the testimony of Dr. Blanda and the medical records of Mr. James's treating physicians, plaintiffs have not identified the medical records of any other doctor except Dr. Blanda.

[5] *See* letter from Dr. Blanda to Jeffery Speer, dated October 21, 2010, attached as Exhibit A to defendants' motion for summary judgment, Doc. 59.

briefing, argued their positions from the standpoint of Louisiana law.  However, the instant case is

one arising under this Court's diversity jurisdiction, and although the substantive aspects of this case

will be governed by Louisiana law, the Federal Rules of Evidence control the admission of expert

testimony.  *See Mathis v. Exxon Corp.*, 302 F.3d 448, 459 (5th Cir. 2002), *citing Doddy v. Oxy USA,*

*Inc.*, 101 F.3d 448, 459 (5th Cir. 1996).  *See also Dawsey v. Olin Corp.*, 782 F.2d 1254, 1262 (5th Cir.

1986);Fed. R. Evid. 1101 ("These rules apply to the United States District Courts . . . . ").  Rule 702

of the Federal Rules of Evidence provides the standard for the admission of expert testimony in

federal cases:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to
> understand the evidence or to determine a fact in issue, a witness qualified as an
> expert by knowledge, skill, experience, training, or education, may testify thereto in
> the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts
> or data, (2) the testimony is the product of reliable principles and methods, and (3)
> the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702.

Rule 702 provides a two-prong test for the admissibility of expert testimony: (1) the evidence

must "assist the trier of fact," that is, be **relevant;**[6] and (2) the evidence must be **reliable**.  *Daubert*

*v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469, (1993).  In

*Daubert*, the Court provides an illustrative list of factors that may aid a court in evaluating reliability:

(1) whether the expert's theory can be or has been tested; (2) whether the theory has been subject to

peer review and publication; (3) the known or potential rate of error of a technique or theory when

applied; (4) the existence and maintenance of standards and controls; and the degree to which the

---

[6] Rule 401 of the Federal Rules of Evidence defines relevant evidence as that which has "any tendency to make any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401.

technique or theory has been generally accepted in the scientific community. The foregoing factors apply most comfortably in cases involving scientific testimony, but may offer little help in other cases, particularly those involving non-scientific experts. *See Kumho Tire,* 526 U.S. at 150-52. Accordingly, the factors are merely illustrative, rather than exhaustive, and "considerable leeway" is conferred upon the trial court in deciding which tests or factors to use to assess the reliability of an expert's methodology. *Id.* In all cases, the proponent of the expert witness bears the burden of establishing the expert's testimony satisfies the qualification, reliability, and helpfulness requirements of Rule 702 and *Daubert. Moore* v. *Ashland Chemical, Inc.,* 151 F. 3d 269, 276 (5th Cir.1998). Importantly, the expert's testimony must be reliable at each and every step or else it is inadmissible. *Knight,* 482 F.3d. at 355.[7]

Rule 702 imposes a duty on trial courts to act as "gatekeepers" to insure that speculative and unreliable opinions do not reach the jury. *Daubert,* 509 U.S. at 589 n.7; *Knight* v. *Kirby Inland Marine, Inc.,* 482 F.3d 347, 355 (5th Cir. 2007). The overall objective of the gatekeeping requirement is to make certain that expert witnesses employ in the courtroom the "same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co.* v. *Carmichael,* 526 U.S. 137, 152, 119 S. Ct. 1167, 1431. Ed. 238 (1999); *Hodges v. Mack Trucks, Inc.,* 474 F.3d 188, 194 (5th Cir. 2006). The court's gatekeeping role is especially significant, since "the expert's opinion can be both powerful and quite misleading because of the difficulty in evaluating it." *Daubert,* 509 U.S. at 595, 113 S. Ct. at 2788.

---

[7] Though *Daubert* involved scientific experts, the Supreme Court has since made it clear the strictures of Rule 702 and *Daubert* apply with equal force to non-scientific expert witnesses. *See Kumho Tire,* 526 U.S. at 147. *See also Watkins v. Telsmith, Inc.,* 121 F.3d 984,991 (5th Cir. 1997).

First, the plaintiffs appear to argue, even if Dr. Blanda is not qualified to render an expert opinion as to the cause of death, no expert opinion or testimony is necessary in this case to understand the issues beyond the general understanding of the jury. In this manner, the plaintiffs appear to challenge the *relevance* of an expert to testify as to cause of death. This Court finds the argument of the plaintiffs is without merit, concluding the testimony of an expert to interpret an autopsy report and opinion as to the cause of death – in the face of an argument by the plaintiffs that the actual cause of death was not the cause listed on the autopsy report but, in fact, an accident that occurred more than two years prior to the death – would undoubtedly assist the jury in making its determination on a wrongful death claim. Therefore, this Court believes an expert opinion is necessary, and would be highly relevant to, the issue of medical causation in this case.

This Court is well aware of Dr. Blanda's qualifications as an orthopedic surgeon. The question is whether he is qualified to give expert testimony regarding pharmacology, pathology, or toxicology, fields of expertise that might be *relevant* with respect to the formation of expert testimony concerning a human being's cause of death, and therefore whether Dr. Blanda's opinions on the subject of cause of death is sufficiently *reliable* so as to be inadmissible at trial.

In the instant case, it is not argued that Dr. Blanda did any scientific testing of his own to determine Mr. James's cause of death. Rather, what is presented by the plaintiff appears to be merely Dr. Blanda's speculations that the actual cause of death in this case was a potential contraindication among the medications that were prescribed to Mr. James. This Court believes every doctor, with any degree of formal medical training, would know certain medications may not interact well with other medications. However, it is equally true that the medications in Mr. James's system may not have contraindicated, and may not have caused Mr. James's death. Moreover,

12

overriding all of the foregoing is the fact that the autopsy report, in addition to stating the cause of death as cardiomegaly, states "postmortem toxicologic studies are *noncontributory*."[8]

If this Court determined Dr. Blanda were merely opining as to something his basic training qualifies him to know, this Court might allow such testimony or opinion. However, what plaintiffs apparently will attempt to introduce is Dr. Blanda's purely speculative opinion on matters with which he admittedly has *no training or experience*. Thus, Dr. Blanda's lack of qualification or experience in either pathology, toxicology, or pharmacology shows he cannot render a *reliable* opinion as to any suspected cause of death of Mr. James. Moreover, Dr. Blanda's opinion is contradicted by the actual autopsy report itself, which states toxicology results were noncontributory to the death of Mr. James. Considering the foregoing, this Court will not allow Dr. Blanda to testify at trial regarding the cause of death of Mr. James.

The plaintiffs admittedly have no additional evidence to present at trial regarding the cause of death of Mr. James.[9] Although the plaintiffs state in their opposition brief they intend to produce the reports of Mr. James's "treating physicians" – as well as the opinion of Dr. Blanda – they have come forward with no reports other than the letter from Dr. Blanda, as well as the certificate of death and the autopsy report, both of which state the cause of Mr. James's death was "cardiomegaly."

_____

[8] *See* Autopsy Report, attached as Exhibit 2 to plaintiffs' opposition brief, Doc. 62, at p. 1 (emphasis added).

[9] Also unavailing is plaintiffs' alternative argument that if the cause of death was a pre-existing heart condition -- which is *not* the plaintiffs' theory of the case – the defendants must take Mr. James as they find him, and Mr. James's death could have been caused by a pre-existing heart condition that was exacerbated by the accident. However, the plaintiffs have not come forward with the expert testimony of a cardiologist who will testify Mr. James had a pre-existing heart condition that was exacerbated by the accident. The only evidence presented by plaintiffs is a pre-surgical ECG performed at the request of Dr. Blanda in March 2009, approximately one year before the death of Mr. James, which showed "sinus bradycardia." Without expert testimony to explain the significance of such a finding, or how it might have contributed to the actual cause of death, the foregoing argument is not sufficient to defeat the defendants' motion for summary judgment.

Considering the foregoing, the plaintiffs have not provided sufficient proof of medical causation in this case.  As the plaintiffs are unable to come forward with sufficient, reliable evidence to prove their wrongful death claim against the defendants, summary judgment on this claim is mandated.

Considering he foregoing, IT IS ORDERED that the Motion for Summary Judgment [Doc. 59] filed by Lincoln General Insurance Company, Fast Lane Trucking, USA, Inc, and Elier Hernandez is GRANTED in its entirety, and plaintiffs' wrongful death claim against the defendants is DISMISSED WITH PREJUDICE.

THUS DONE AND SIGNED in Lafayette, Louisiana, this ___15___ day of August, 2011.

REBECCA F. DOHERTY
UNITED STATES DISTRICT JUDGE

14