RECEIVED

AUG 3 0 2011

TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE, LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

| | |
|---|---|
| RANDALL SCOTT JAMES, ET AL. | CIVIL ACTION NO. 09-0727 |
| VERSUS | JUDGE DOHERTY |
| LINCOLN GENERAL INS. CO., ET AL. | MAGISTRATE JUDGE HANNA |

## MEMORANDUM RULING

Pending before the Court is the Motion for Partial Summary Judgment [Doc. 58] filed by defendants Lincoln General Insurance Company, Fast Lane Trucking, USA, Inc, and Elier Hernandez (hereinafter referred to collectively as "defendants"). In their motion, defendants seek dismissal of "any and all claims for economic loss (past/present/future lost income and/or lost earning capacity) asserted by plaintiff Dwayne Allen O'Quain, individually and on behalf of S&D Auto Transport, LLC, [S&D"] in this matter." The motion is opposed by the plaintiffs [Doc. 63], and defendants have filed a Motion for Leave to file Reply Brief [Doc. 70], which is herein GRANTED. Defendants have also filed a Motion for Leave to File First Amended Statements of Undisputed Material Facts and First Amended Memorandum in Support of Motion for Partial Summary Judgment [Doc. 61], which is herein GRANTED.

For the following reasons, the Motion for Summary Judgment is GRANTED in its entity. Ergo, to the extent a claim for economic loss/lost revenue might have been properly pled procedurally by S&D, that claim is DISMISSED WITH PREJUDICE, as such claim, substantively, is not available to S&D or Mr. O'Quain, acting on behalf of S&D.

I.      **Factual and Procedural Background**

The instant lawsuit arises out of a vehicular accident that occurred in the state of Louisiana on or about April 19, 2008, in which the plaintiff's decedent, Randall Scott James ("James"), a Mississippi resident, was injured after his vehicle was struck by an 18-wheeler operated by Elier Hernandez, a Florida resident. At the time of the accident, both Mr. James and Mr. Hernandez were acting in the course and scope of their employment, Mr. James for S&D Transport, LLC ("S&D"), and Mr. Hernandez for Fast Lane Trucking USA, Inc. ("Fast Lane"). Plaintiffs allege the accident was solely due to the fault of Mr. Hernandez. Also at the time of the accident, S&D was co-owned equally by Mr. James and Mr. Dwane O'Quain and was in the business of transporting vehicles purchased at auction by Mr. O'Quain.

On March 9, 2009, the original complaint was filed by Mr. James and Mr. O'Quain, "individually and on behalf of S&D," in the Fifteenth Judicial District for the Parish of Lafayette, Louisiana, alleging property damages to the truck operated by Mr. James and penalties for the alleged bad faith of Lincoln General to timely pay for repairs to the truck operated by Mr. James. Plaintiffs thereafter amended their complaint to add claims for general and special damages due to the injuries suffered by Mr. James in the accident and loss of revenue sustained by S&D for Lincoln General's bad faith failure to timely pay for repairs to Mr. James's truck. The case was removed to this Court on May 5, 2009. Mr. James died on March 13, 2010, and on June 29, 2010, with leave of Court, Mr. James's son, Courtland Simoneaux, was substituted as a party plaintiff in the case. After Mr. James's death, in plaintiffs' amending complaint dated June 29, 2010, plaintiffs added a claim for wrongful death, presumably against all of the defendants, arguing Mr. Simoneaux is entitled to damages for the wrongful death of his father, which Mr. Simoneaux alleges was caused

2

by Mr. James's vehicular accident with Mr. Hernandez.[1]

In the instant motion for summary judgment, defendants seek dismissal of the claim for economic loss/lost revenue ostensibly pled by S&D on several grounds. First, the defendants argue Mr. O'Quain has never properly asserted a claim in any pleading for economic loss sustained individually by him; the basis of S&D and/or Mr. O'Quain's economic loss claims has been compromised and settled; as a matter of law, Mr. O'Quain cannot assert the rights of S&D, and therefore, cannot assert a claim for economic loss on behalf of S&D; and, as a matter of law, S&D does not have a cause of action for recovery of economic loss damages. Defendants argue they bring the instant motion out of an abundance of caution, averring the motion "presents the somewhat admittedly peculiar scenario of requesting the dismissal of a claim that has not actually been asserted." Because this Court concludes, as a matter of law, that no claim for economic loss damages is available to either S&D itself or to *a member of S&D on behalf of the company*, this Court concludes it need not, at this juncture, determine whether S&D's claims for economic loss have, procedurally, been properly placed before this Court, as there is no substantive basis for the disputed claims.

## II.     Summary Judgment Standard

A party claiming relief, or a party against whom relief is sought, may move, with or without supporting affidavits, for summary judgment on all or part of the claim. Fed. R. Civ. Proc. 56(a) and (b). Summary judgment is appropriate if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. Proc. 56(c)(1)(2).

---

[1] In a separate ruling on defendants' motion for summary judgment, this Court dismissed plaintiffs' wrongful death claims alleged against all defendants. *See* Memorandum Ruling dated August 15, 2011. Doc. 74, 76.

> When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must – by affidavits or as otherwise provided in this rule – set out specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party.

Fed. R. Civ. Proc. 56(e). As summarized by the Fifth Circuit in *Lindsey v. Sears Roebuck and Co.*, 16 F.3d 616, 618 (5th Cir. 1994):

> When seeking summary judgment, the movant bears the initial responsibility of demonstrating the absence of an issue of material fact with respect to those issues on which the movant bears the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). *However, where the non-movant bears the burden of proof at trial, the movant may merely point to an absence of evidence, thus shifting to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial.* Id. at 322; *see also, Moody v. Jefferson Parish School Board*, 2 F.3d 604, 606 (5th Cir.1993); *Duplantis v. Shell Offshore*, Inc., 948 F.2d 187, 190 (5th Cir.1991). Only when "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party" is a full trial on the merits warranted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

The Supreme Court has instructed:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Where no such showing is made, "[t]he moving party is entitled to a judgment as a matter of law because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof."

*Lujan v. National Wildlife Federation*, 497 U.S. 871, 884 (1990) (emphasis added), *quoting Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)). The Court later states:

> In ruling upon a Rule 56 motion, "a District Court must resolve any factual issues of controversy in favor of the non-moving party" only in the sense that, where the facts specifically averred by that party contradict facts specifically averred by the movant, the motion must be denied. That is a world apart from "assuming" that general averments embrace the "specific facts" needed to sustain the complaint. As set forth above, Rule 56(e) provides that judgment shall be entered against the nonmoving party unless affidavits or other evidence set forth specific facts showing that there is

4

> a genuine issue for trial. The object of this provision is not to replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit. Rather, the purpose of Rule 56 is to enable a party who believes there is no genuine dispute as to a specific fact essential to the other side's case to demand at least one sworn averment of that fact before the lengthy process of litigation continues.

*Id.* at 888-89 (1990) (internal quotations and citations omitted). The Fifth Circuit has further elaborated:

> [The parties'] burden is not satisfied with 'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence. We resolve factual controversies in favor of the nonmoving party, but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts. We do not, however, in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts. ...[S]ummary judgment is appropriate in any case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant.

*Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (citations and internal quotations omitted).

Finally, in evaluating evidence to determine whether a factual dispute exists, "credibility determinations are not part of the summary judgment analysis." *Id.* To the contrary, in reviewing all the evidence, the court must disregard all evidence favorable to the moving party that the jury is not required to believe, and should give credence to the evidence favoring the nonmoving party, as well as that evidence supporting the moving party that is uncontradicted and unimpeached. *Roberts v. Cardinal Servs.*, 266 F.3d 368, 373 (5th Cir. 2001).

### III.  Law and Analysis

As an initial matter, this Court has reviewed all of the briefing and exhibits attached thereto and concludes defendants' argument with respect to the purported settlement of any economic loss claim – whether pled by Mr. O'Quain individually or by Mr. O'Quain on behalf of S&D – is without

merit. The "Receipt, Release and Indemnity Agreement," executed by Courtland Simoneaux (as the substituted party plaintiff for the deceased Mr. James), Dwayne O'Quain, S&D, and Mid South Bank (referred to in the settlement documents as "the releasing parties"), shows the releasing parties released "any and all actions and causes of action, in law or in equity, claims, demands, compensation and liability, known as well as unknown, anticipated and unanticipated, *for all property damages*,[2] directly or indirectly **incurred to the 1996 Freightliner tractor trailer bearing VIN 1FUPDSEB7TH869234 with license plate bearing numbers A220933 (tractor) and 42006A (trailer),**" as well as "any and all claims and/or entitlements, whether alleged or otherwise, *for bad faith penalties* pursuant to Louisiana Revised Statutes 22:658 and/or 22:1220......"[3] The settlement agreement also contains the following language:

> Fast Lane Trucking USA, Inc., Elier Hernandez and Courtland Simoneaux, individually and on behalf of Randall Scott James, and Dwayne Allen O'Quain, individually and on behalf of S&D Auto Transport, LLC agree that this stipulation is as to liability for the occurrence of the subject accident only and is not a stipulation as to the occurrence of any damages (property or personal), injuries, causation of and/or extent of damages, injuries or losses, including the death of Randall Scott James, *nor is it a stipulation as to any economic losses, loss of earnings or loss of income or revenue (past, present and/or future). All issues pertaining to the causation of injuries and damages, extent of injuries and damages, the death of Randall Scott James and economic losses, loss of earnings or loss of income or revenue (past, present and/or future), are specifically reserved for trial and consideration of the trier of fact.*[4]

---

[2] "All property damages" is a defined term within the settlement agreement, consisting of "the cost of repair, inspection, cleaning, painting, repossession, sale, acquisition, actions (legal or otherwise) to secure payment on any promissory notes and/or financing agreement, attorneys fees and any liability flowing therefrom including liability for failure to make payments, return of monies paid or owed on any financing agreement, lesion, court costs, attorney's fees, punitive damages, statutory damages, and penalty statutes."

[3] *See* "Receipt, Release and Indemnity Agreement," attached as Exhibit "A" to plaintiffs' opposition brief, Doc. 63, at p. 3 (emphasis added).

[4] *Id.* at p. 3 (emphasis added).

6

The settlement agreement identifies the vehicle at issue in no less than three places, and at each turn, specifically limits the claims released to that vehicle and its damage, i.e., property damage, and limits the release to that vehicle and its damage. Consequently, the express language of the contract of release, on its face and by its clear language, releases only those claims *of property damage to a specific vehicle*, i.e., the vehicle named in the release document. Thus, the contract language is clear and the release is limited to that clear language, hence there is no confusion or ambiguity and the contract stands within its four corners. Furthermore, as no party has argued the reservation of any economic loss/lost revenue claims is contrary to public policy, the contract can be so limited. Therefore, after review of the foregoing, this Court concludes it is clear, within the four corners of the settlement agreement itself, that the parties did not settle, and plaintiffs did not release, any claims for economic loss or lost revenue, as argued by the defendants.

However, despite the fact that the claim for economic loss/lost revenue was not settled, this Court concludes such a claim, as a matter of law, is not permitted under Louisiana law under the undisputed facts of this case.[5] Indeed, Louisiana law is clear that a *corporation* has no cause of action for an economic loss claim based on the personal injuries sustained by one of the business's employees. *See Peterson v. Western World Ins. Co.*, 491 So.2d 78, 79 (La. App. 1st Cir. 1986) (air conditioning corporation had no cause of action for economic losses based on impairment of past, present, or future earning capacity of company's employee after he was injured on the job), *citing Baughman Surgical Associates, Ltd. v. Aetna Casualty and Surety Company,* 302 So.2d 316 (La.

---

[5] In their brief, plaintiffs argue "[t]he claim of O'Quain and /or S&D are based firmly on Louisiana Civil Code Article 2315," while defendants argue the application of Louisiana law to the issue of recovery of economic damages. Therefore, the parties agree Louisiana law governs the issue of whether a cause of action/right of action exists for the recovery of economic damages/loss of revenue in this case.

App. 1st Cir.1974) (professional medical corporation sued tortfeasor's insurance company for damages sustained by one of the two doctor/employees of the corporation; corporation sought damages which were allegedly sustained as a result of the doctor's inability to practice medicine because of his injury; court held corporation could not recover damages from tortfeasor for losses resulting from doctor's injuries, holding damages claimed by corporation were too remote, too speculative and evasive, and were merely consequences of accident and were not included within the purview of La.Civ.Code art. 2315).[6]

The principle noted, the jurisprudence has held, applies even when the employee at issue is closely associated with the corporation, such as when he or she is the owner, president or sole shareholder of the corporation. *Chaten v. Six Flags New Orleans, Inc.*, 2005 WL 1574313, 1 (E.D. La. 2005) (J. Vance), *citing Fuller v. United States,* 2001 WL 699036, 2 (E.D. La. 2001) (M.J. Wilkinson) (corporation has no claim for economic losses resulting from injury to its majority shareholder, president and chief executive officer). The court stated in *Baughman*:

> The possible loss of key personnel to employers through tortious or natural causes is ever present. An employer is permitted under our law to contract with insurers for protection against such losses, but the recovery ex delicto is restricted to those included within the law.

302 So.2d at 318, *cited in Peterson*, 491 So.2d at 79. *See also PPG Industries, Inc. v. Bean Dredging,*[7] 447 So.2d 1058 (La.1984) (Louisiana Supreme Court affirmed the granting of a

---

[6] Although the juridical entity involved in this matter is an LLC and not a corporation, the same result should flow, for reasons discussed within the text of this opinion.

[7] *PPG Industries* applied the "economic loss rule" to economic loss claims alleged by a customer of a pipeline owner against a dredging company for negligent injury to the pipeline owner's performance to supply natural gas to the plaintiff custome. The Louisiana Supreme Court stated:

> Rules of conduct are designed to protect *some* persons under *some* circumstances against *some* risks. Policy considerations determine the reach of the rule, and there must be an ease of

peremptory exception of no cause of action, holding there was no cause of action in favor of a third party for indirect economic loss caused by a tortfeasor's negligent conduct, noting the duty allegedly violated did not encompass the particular risk of injury sustained by the third party and did not intend protection from the particular loss for which recovery was sought).[8]

The only issue for this Court to determine is whether the rule set forth in the cases above – which rule was applied in cases involving *corporations* – applies to the juridical entity at hand, i.e., an LLC, a limited liability company. Although this Court was unable to find a case squarely on point,[9] this Court is persuaded the rule applies to LLCs. First, plaintiffs have not cited this Court to

---

> association between the rule of conduct, the risk of injury, and the loss sought to be recovered. A judge, when determining whether the interest of the party seeking recovery of damages is one that falls within the intended protection of the rule of law whose violation gave rise to the damages, should consider the particular case in the terms of the moral, social and economic values involved, as well as with a view toward the ideal of justice.

447 So.2d at 1061 (internal citations omitted).

[8] Plaintiffs' attempt to argue the recent Fifth Circuit case of *Wiltz v. Bayer CorpScience, Ltd.*, 645 F.3d 690 mandates a different result in this case is without merit. First, this Court notes the *Wiltz* case applied the traditional "economic loss rule." There is a distinction between the "economic loss rule" and the rule applied in the instant case. While the "economic loss rule" holds a plaintiff may not recover economic losses resulting from negligence if the plaintiff lacks a proprietary interest in the damaged property, the rule applied in the instant case is that a business cannot recover economic losses as a result of personal injuries sustained by an employee of the business. Both rules turn on the same analysis, however, i.e., there must be an "ease of association" between the duty not to negligently damage property belonging to another and the risk of injury to the party claiming injury.

Second, although the court in *Wiltz* acknowledged *PPG Industries* "left the door open for case-by-case adjustments," the court in *Wiltz* nevertheless applied the Louisiana economic loss rule to a cause of action arising under the Louisiana Products Liability Act. Plaintiffs' argument that the public policy of the Louisiana economic loss rule should not be applied in this case because Mr. O'Quain is "not some far removed third party but an individual who's suffered a direct loss due to damage caused to his own property" is, alas, without merit. Indeed, in the *Peterson* case, *supra*, Mr. Peterson himself – the president and sole shareholder of Peterson's Air Conditioning – was the employee injured on the job. Mr. Peterson sought damages for his own personal injuries, while the business attempted to state a cause of action for damages it sustained or might sustain as a result of Mr. Peterson's injuries and impaired earning power. The court rejected this argument and held the corporation had no cause of action.

[9] Although defendants cite to *Peterson*, *supra*, in their brief and argue *Peterson* "applies this rule to limited liability companies making claims for injuries to its managers/members," *Peterson* actually involved a closely-held corporation.

9

a case that stands for the proposition that the rule of *Peterson*, *Baughman*, and *Fuller* should not be applied to an LLC. Furthermore, this Court's own research uncovered a case that is illuminating and helps to persuade this Court the rule *should* be applied to an LLC. In *Wallace v. AeroPremier Jet Center, LLC*, 2010 WL 3081370, 3 (E.D. La. 2010) (J. Berrigan),[10] Judge Berrigan addressed this problem and this Court finds her analysis enlightening. In *Wallace* the lawsuit arose out of alleged damages to a Cessna aircraft due to the alleged negligence of the defendant. The aircraft was owned by an LLC, which was comprised of Mr. Wallace and Mr. Yarborough as members. The lawsuit was brought by Mr. Wallace, Mr. Yarborough and the LLC. Apart from the claims of the LLC, Messrs. Wallace and Yarborough alleged individual damages as a result of their inability to use the aircraft for "business opportunities," and attempted to assert direct claims for their economic damages. In concluding the claims of the individual members for damage to the LLC's property were, in fact, indirect (and, therefore, derivative), the court noted:

> The plaintiffs present several differences between LLCs and corporations, including that corporations are controlled by a board of directors and shareholders, while LLCs are controlled by a small number of managers and owners; LLCs and corporations file different tax documents and are treated differently for tax purposes; and LLCs may operate as partnerships, while corporations cannot. . . . ***However . . . . LLCs are similar to corporations in important ways, namely they are separate legal entities and members have no interest in a corporation's property or an LLC's property. In this case, the plaintiffs Wallace and Yarborough did not individually own the aircraft; the LLC owned the aircraft.*** Wallace and Yarborough cannot show that they are damaged apart from the damages of the LLC. That is, the plaintiffs can only recover for AeroPremier's alleged negligence if it is found that the LLC can recover for AeroPremier's alleged negligence. This falls squarely within American Law Institute's test as a derivative, or indirect, claim and is therefore barred.

---

[10] Although this Court is not bound by the *Wallace* decision, it finds the rationale of the opinion persuasive.

*Wallace*, 2010 WL 3081370, 3 (emphasis added).[11]

Thus, in *Wallace*, Judge Berrigan focused on the *legal status of an LLC* – which, like a corporation, *is a separate and independent juridical entity apart from its members* – in concluding the individual members of the LLC's claims for damage to the property of the LLC were derivative, and, therefore, barred. This Court agrees with Judge Berrigan's analysis in *Wallace* determining the rules of *Peterson*, *Baughman*, and *Fuller* are applicable to the instant case involving an LLC. Indeed, Louisiana courts have made a policy determination that where a company, such as a corporation, is a separate legal entity, the company cannot assert a claim for economic loss damages based on the negligent injury of an employee of the company; an LLC is also a separate legal entity. This Court agrees with Judge Berrigan's language in *Wallace* concerning the similarity between corporations and LLCs and her conclusion the same rule should be applied to LLCs and should be applicable to S&D in this case, which, as an LLC, is an independent legal entity, separate and apart from its members. Indeed, one who invokes the rights of an LLC, which include a limitation on liability for the LLC's members, must, also, bear the limitations of such an entity, including the inability of the LLC to recover economic damages based on the negligent injury of an employee and/or member. This Court sees no legally significant difference between the *Peterson* case and the instant case when viewed in that light. Thus, in the instant case, this Court concludes S&D – to the extent it might, or might not, have properly pled a claim for economic loss or loss of revenue due to the injuries sustained by Mr. James – cannot make a claim for such economic loss. The damages

---

[11] The court also pointed out, as has this Court, that Louisiana law bars an individual member of an LLC from pursuing an action for damages to the property of the LLC; and that, rather, when property is acquired by an LLC and owned wholly by the LLC, the property interests are strictly those of the separate legal entity). *See Wallace*, 2010 WL 3081370, at *2.

sought are too speculative and remote and derivative, and the duty, allegedly violated by Mr. Hernandez, does not encompass the risk of such an indirect and derivative loss to the company.

Furthermore, because the plaintiffs argue S&D was properly named as a party plaintiff in this matter and was the proper party asserting the claim for economic loss/loss of revenue, plaintiffs are hard pressed to, and in fact do *not,* argue or respond to the argument made by the defendants, arguing Mr. O'Quain cannot properly assert a claim *on behalf of* S&D for loss of revenue. Indeed, La. Rev. Stat. §12:1320(C) states "[a] member, manager, employee, or agent of a limited liability company is not a proper party to a proceeding by or against a limited liability company, except when the object is to enforce such a person's rights against or liability to the limited liability company." *See also Cowboy Mouth L.L.C. v. Monkey Hill Productions, Inc.,* 1999 WL 35303, 2 (E.D. La. 1999) (J. Duval) (plaintiffs, who were members of limited liability company, were not proper parties to lawsuit in which members sought damages for breach of contract and other tortious acts); *In re Mendy,* 2003 WL 21488654, 3 (E.D. La. 2003) (J. Barbier) (under Louisiana law, a limited liability company is a legal entity separate from its members), *citing* La. Rev. Stat. §12:1304;[12] *Metro Riverboat Assocs., Inc. v. Bally's La., Inc.,* 779 So.2d 122, 125 (La. App. 4th Cir.2001) (a member of a limited liability company had no legal capacity to file a breach of contract suit on behalf of the limited company because they are separate legal entities). Therefore, to the extent Mr. O'Quain attempts to seek economic loss/loss of revenue damages *on behalf of S&D*, on its face, it would appear, would not be the proper party to do so. However, this Court need not make that legal determination, because, even if this Court were to assume he were the proper party, nonetheless, no

---

[12] La. Rev. Stat. §12:1304(C) states "[u]pon the issuance of the certificate of organization, the limited liability company shall be duly organized, and its separate existence shall begin as of the time of filing of the articles of organization with the secretary of state. . . ."

such claim for economic loss would be available to S&D under applicable Louisiana law.

Therefore, this Court concludes any claim for economic loss/loss of revenue – to the extent it might be found to have been properly asserted – was not settled, and those claims were not released, by the parties, however, to the extent such claims might be found to have been properly pled, no right of action exists as to those claims for S&D, as Louisiana law does not countenance a claim asserted by a business such as S&D for loss of revenue occasioned by the personal injuries sustained by an employee of the business, whether brought by the LLC or by another "on behalf of" the LLC. Considering the foregoing, this Court concludes, as a matter of law, neither S&D nor Mr. O'Quain, acting on behalf of S&D, has or would have a right of action under Louisiana law for damages sustained by S&D due to injury to Mr. James, as an employee of the LLC.

Considering the foregoing, IT IS ORDERED that the Motion for Summary Judgment [Doc. 58] filed by defendants Lincoln General Insurance Company, Fast Lane Trucking, USA, Inc, and Elier Hernandez is GRANTED in its entirety and any and all claims for economic loss/loss revenue – whether asserted by plaintiff Dwayne Allen O'Quain individually, or perhaps, by Mr. O'Quain "on behalf of" S&D Auto Transport, LLC, [S&D] -- are DISMISSED WITH PREJUDICE.

THUS DONE AND SIGNED in Lafayette, ~~Louisiana~~, this _30_ day of August, 2011.

REBECCA F. DOHERTY
UNITED STATES DISTRICT JUDGE